UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| JACOB L., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 6:19-CV-6847-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Jacob L. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 21).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 17. Plaintiff also filed a reply. *See* ECF No. 18. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 17) is **GRANTED.**

## BACKGROUND

On November 9, 2015, Plaintiff protectively filed an application for SSI, alleging disability beginning March 20, 2011 (the disability onset date), due to irritable bowel syndrome ("IBS"), depression, and anxiety. Transcript ("Tr.") 15, 205, 258. Plaintiff's claim was denied initially on February 3, 2016 (Tr. 101-03), after which he requested a hearing (Tr. 110). On September 19, 2018, a hearing was held before Administrative Law Judge Ellen Parker Bush (the "ALJ") in

Rochester, New York.[1] Tr. 15, 45. Plaintiff appeared and testified at the hearing and was represented by Joseph Paladino, an attorney. Tr. 15. Elaine Cogliano, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on November 26, 2018, finding that Plaintiff was not disabled. Tr. 15-27. On September 19, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's November 26, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

---

[1] The Court notes that Administrate Law Judge Brian Curley held a hearing on April 16, 2018, during which Plaintiff appeared with his attorney Kelly Laga-Sciandra. However, that hearing was postponed in order to obtain new evidence. Tr. 15.

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in her November 26, 2018 decision:

1. The claimant has not engaged in substantial gainful activity since November 9, 2015, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: anxiety disorder and depressive disorder (20 CFR 416.920(c)). (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can understand, remember, and apply simple instructions and carry out simple tasks. In addition, he can sustain an ordinary routine and interact with supervisors, co-workers, and the general public on an occasional basis.  The claimant does not require any special supervision.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on March 20, 1993 and was 22 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 9, 2015, the date the application was filed (20 CFR 416.920(g)).

Tr. 15-26.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on November 9, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 27.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ erroneously found Plaintiff's IBS non-severe and failed to consider the effects of this condition in the subsequent steps of the decision. *See* ECF No. 11-1 at 19-23. Plaintiff further argues that even if the IBS was non-severe, the ALJ was still required to consider the effects of the impairment and failed to do so. *See id*. Next, Plaintiff argues that the ALJ did not properly evaluate the source opinions from Plaintiff's mental health counselors. *See id*. at 23-30. Accordingly, argues Plaintiff, the ALJ's decision was not supported by substantial evidence. *Id*. at 19-30.

The Commissioner argues in response that the ALJ's step two finding that Plaintiff's IBS is not a severe impairment was supported by substantial evidence. Further, argues the Commissioner, it was Plaintiff's burden to prove additional limitations were necessary due to IBS, and he failed to meet this burden. *See* ECF No. 17-1 at 17-19. With respect to Plaintiff's second point of error, the Commissioner argues that the ALJ properly considered the opinions of Plaintiff's therapists in accordance with the applicable regulations, and the weights assigned were supported by substantial evidence. *See id*. at 19-22.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ explained her determination that Plaintiff's IBS was not severe, and thoroughly discussed the evidence regarding Plaintiff's mental impairments, including the opinions from Plaintiff's therapists. Accordingly, the ALJ's conclusion that Plaintiff could perform a full range of work at all exertional levels with the nonexertional limitations noted is supported by substantial evidence. Tr. 21.

Prior to the relevant period, which began on November 9, 2015, through at least July 2018, Plaintiff received treatment from primary care physician ("PCP") Sasha Nelson, M.D. ("Dr. Nelson"), for a range of complaints, including IBS, gastroesophageal reflux disease ("GERD"), low back and neck pain, headaches, and anxiety, as well as routine health maintenance. Tr. 308-415, 725-43. Plaintiff saw Howard D. Merzel, M.D. ("Dr. Merzel"), and Heather Grotke, R.P.A.-C. ("Ms. Grotke"), for treatment of GERD and IBS prior to the relevant period, Tr. 416-17. Plaintiff also started attending mental health therapy for depression and anxiety prior to the relevant period. Tr. 425-45, 571-94.

On November 3, 2015, Plaintiff saw therapist Lisa Clattenburg, L.M.S.W. ("Ms. Clattenburg"), and had a mildly anxious mood and appropriate affect. Tr. 446, 595. Plaintiff's memory was not impaired, and he was cooperative and interested. *Id*. Ms. Clattenburg observed that Plaintiff had good judgment and was able to attend and maintain focus. *Id*.

Plaintiff saw Dr. Merzel on November 17, 2015 for his IBS issues. Tr. 418. Plaintiff reported three to four bowel movements per day. *Id*. His examination was normal including normal bowel sounds, soft and nontender abdomen, and cooperative demeanor, and Dr. Merzel recommended a probiotic and a trial of medication. *Id*.

On November 19, 2015, Plaintiff saw Virginia Wohltmann, M.D. ("Dr. Wohltmann"), to discuss medications to treat his anxiety. Tr. 449, 598. Dr. Wohltmann observed that Plaintiff was alert and cooperative with a mildly depressed mood. Tr. 598. Plaintiff saw Ms. Clattenburg for therapy the following day and examination showed no memory impairment, a mildly anxious mood, and the ability to attend and maintain focus. Tr. 451, 600. Plaintiff reported a slight decrease in anxiety symptoms. Tr. 452, 601. He returned to therapy with Ms. Clattenburg on December 8, 2015, with a mildly anxious mood. Tr. 454, 603. Plaintiff's memory was not impaired; he was cooperative and interested; his judgment was good; and he was able to attend and maintain focus. *Id*. He reported that he had not picked up his medication and was unsure if he would. Tr. 455, 604.

Plaintiff returned to see Dr. Wohltmann on December 17, 2015 and reported that he had not picked up the prescribed medication. Tr. 605. Plaintiff continued to attend therapy with Ms. Clattenburg with similar exam findings in December 2015, January 2016, and February 2016. Tr. 607-14, 616-20. On March 14, 2016, Ms. Clattenburg wrote that Plaintiff "appears to be doing well." Tr. 622. On April 12, 2016, Plaintiff was cooperative and interested with a mildly anxious mood; he had good judgment; and he was able to attend and maintain focus. Tr. 623. Thereafter, the record indicates that Plaintiff continued regular therapy sessions with Ms. Clattenburg through April 2017. Tr. 626-57, 659-65, 669.

Plaintiff returned to see Dr. Nelson on April 14, 2016, for follow-up of migraines. Tr. 723-25. Plaintiff's examination was normal including normal bowel sounds, full strength, normal gait, and no obvious weakness. Tr. 724.

On April 25, 2016, Ms. Clattenburg completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form. Tr. 861-62, 865-66. She checked boxes indicating no evidence of limitation in understanding,

remembering, or carrying out instructions, making simple decisions, or adhering to basic standards of personal hygiene and grooming. Tr. 862, 866. She also indicated that Plaintiff was moderately limited in maintaining attention and concentration, interacting appropriately with others, maintaining appropriate behavior without exhibiting behavioral extremes, and functioning in a work setting at a consistent pace. Tr. 862, 866. She wrote that Plaintiff reported "severe anxiety and panic attacks but is currently working towards earning an online degree, he may benefit from not working until school is completed." Tr. 862, 866.

Plaintiff complained of left knee pain when he saw Dr. Nelson on May 17, 2016. Tr. 722. The examination showed no effusion with tenderness in the left knee; tests were negative for instability but showed reduced hip strength. *Id*. Dr. Nelson prescribed knee exercises, ice, and over-the-counter medication. *Id*. On May 26, 2017, Plaintiff returned for a disability evaluation. Tr. 719-21. Plaintiff appeared slightly anxious, and Dr. Nelson assessed Plaintiff with anxiety, not controlled, and opined that Plaintiff could not work "at this time." Tr. 720. Dr. Nelson suggested that Plaintiff consider cognitive behavioral therapy ("CBT") in addition to counseling to meet the goal of returning to work. *Id*. On the same date, Dr. Nelson wrote a letter stating that Plaintiff had a history of severe anxiety and was "unable to work at this time." Tr. 881. On June 16, 2016, Plaintiff had a follow-up visit with Dr. Nelson for his IBS. Tr. 718. Plaintiff reported using medication a few times a week that helped his symptoms; his abdominal examination was normal; and Dr. Nelson characterized Plaintiff's IBS as "decently controlled." *Id*.

Ms. Clattenburg completed another employability form on September 2, 2016. Tr. 859-60. She checked boxes indicating that Plaintiff could make simple decisions and maintain hygiene standards and was moderately limited in understanding, remembering, and carrying out instructions and maintaining attention and concentration. Tr. 860. Ms. Clattenburg then checked

boxes indicating that Plaintiff was very limited in interacting with others, maintaining socially appropriate behavior without exhibiting behavioral extremes, and functioning in a work setting at a consistent pace. Ms. Clattenburg wrote that Plaintiff had "severe impairments related to anxiety, including panic attacks, difficulty socializing in large groups, and leaving his home unaccompanied," and he was "not appropriate for work at this time." Tr. 860.

Plaintiff underwent surgery to remove kidney stones and place a stent on September 8, 2016. Tr. 489. When Plaintiff saw Dr. Nelson on September 13, 2016, following his surgery, his pain had improved markedly. Tr. 714. A month later, on October 10, 2016, Plaintiff complained to Dr. Nelson of neck pain. Tr. 712. Examination showed tenderness to palpation of the right side of the neck, and Dr. Nelson diagnosed a strained neck muscle and prescribed medication, heat, and stretches. Tr. 712. On January 30, 2017, Dr. Nelson noted that Plaintiff's depression symptoms were not well controlled, but Plaintiff was hoping counseling would help. Tr. 706. Plaintiff also reported he had started exercising. *Id*. Dr. Nelson noted that Plaintiff had not tolerated pharmacotherapy in the past. *Id*.

Plaintiff began counseling with Stacey Herrick, L.C.S.W.-R. ("Ms. Herrick"), on March 22, 2017, for treatment of depression and anxiety. Tr. 750. Plaintiff reported he was married to his husband since 2013; they had no children; and he had a close relationship with his mother and a "conflictual" relationship with his older brother. *Id*. Ms. Herrick described Plaintiff as mild mannered with a pleasant disposition and noted that he had a "long history of struggling socially and academically." *Id*. She noted that Plaintiff's "functioning is further compromised by his low frustration toleration and anxiety." *Id*. Ms. Herrick opined that Plaintiff's mental health and medical diagnosis of IBS significantly hindered his ability to function on a daily basis. Tr. 751. On March 28, 2017, Plaintiff reported difficulty sleeping and an irritable mood. Tr. 758. Ms.

Herrick noted that his mood was depressed, irritable, and anxious. *Id*. Plaintiff's therapy with Ms. Herrick on April 11, 2017 focused on his low self-esteem. Tr. 759.

Plaintiff was discharged from therapy with Ms. Clattenburg on April 27, 2017, because he moved out of the county. Tr. 669. At the time of discharge, Ms. Clattenburg described Plaintiff as moderately improved and stated that his panic attacks had decreased, and he was able to manage his symptoms more effectively. *Id*. On May 1, 2017, Plaintiff told Ms. Herrick that he was struggling to meet school assignment deadlines. Tr. 760. Plaintiff's mood was depressed, irritable, and anxious, but his thought processes were within normal limits. *Id*.

On May 3, 2017, Plaintiff returned to Dr. Nelson for follow-up of his IBS and depression. Tr. 703. Plaintiff denied constipation and diarrhea and reported some depression. *Id*. Dr. Nelson characterized Plaintiff's IBS symptoms as "fairly well controlled" and advised Plaintiff to continue counseling and exercise for his depression. Tr. 704.

On May 9, 2017, Plaintiff reported to Ms. Herrick that his depression was making him tired and unenergetic, and he continued to have trouble completing school assignments on time. Tr. 761. On May 16, 2017, Ms. Herrick discussed alternative treatments for depression because Plaintiff was unwilling to take medications due to side effects. Tr. 762. At his therapy session on May 22, 2017, Plaintiff was irritable and anxious with normal thought processes. Tr. 763. On June 1, 2017, Plaintiff reported feeling more depressed and hopeless about completing his school projects, and he was overwhelmed with finances, school demands, and marital conflict. Tr. 764. On June 13, 2017, Plaintiff reported to Ms. Herrick that he continued to have difficulty sleeping and feeling depressed and overwhelmed. Tr. 765. His mood was depressed, and his thought processes were normal. *Id*.

Plaintiff saw Dr. Nelson with complaints of headaches on June 15, 2017. Tr. 701. The examination was normal including normal bowel sounds, non-tender abdomen, full motor strength, normal gait, and no obvious weakness. *Id*. Dr. Nelson ordered an MRI to evaluate Plaintiff's headaches. Tr. 702.

On July 8, 2017, Plaintiff reported to Ms. Herrick that he was struggling with time management and failed his class because his assignments were late. Tr. 766. His mood was depressed and anxious, and he felt hopeless. *Id*. Ms. Herrick reviewed time management techniques discussed in the prior session and ended the session with a relaxation exercise. *Id*.

Plaintiff saw Dr. Nelson on July 13, 2017, complaining of back pain for the past week. Tr. 699. Dr. Nelson diagnosed mild colitis and recommended a bland diet and heating pad. *Id*.

On July 25, 2017, Plaintiff told Ms. Herrick he was anxious about managing his IBS during an upcoming vacation with his husband's parents. Tr. 767. Plaintiff reported increased anxiety, sadness, and crying at his therapy session on August 1, 2017. Tr. 768. Ms. Herrick reported his mood was sad and anxious, and his thought processes were normal. *Id*. On August 28, 2017, Plaintiff was nervous about passing a class he was retaking. Tr. 769. Ms. Herrick observed that Plaintiff was easily overwhelmed with minimal schoolwork demands. Tr. 769. Plaintiff reported worsening depression on September 5, 2017, and Ms. Herrick observed a depressed mood and normal thought processes. Tr. 770. On September 21, 2017, Ms. Herrick noted that Plaintiff had low frustration tolerance and was anxious about moving to a new apartment. Tr. 771. His mood was irritable and anxious, and his thought processes were normal. *Id*.

On October 10, 2017, Plaintiff reported he loved his new apartment and felt a slight improvement in his depression and sleep since he moved. Tr. 772. On October 31, 2017, Plaintiff vented about failing a school project due to his colorblindness. Tr. 773. On December 12, 2017,

Plaintiff reported that he passed all of his classes but also reported an increase in irritability and feeling tired. Tr. 774. On February 5, 2018, Ms. Herrick observed that Plaintiff's mood was depressed, irritable, and anxious. Tr. 775. On February 26, 2018, Plaintiff reported that his depression was interfering with his ability to complete his schoolwork. Tr. 776.

On March 15, 2018, Ms. Herrick completed a Medical Opinion Statement (Mental). Tr. 752-56. She indicated she had seen Plaintiff 20 times over the previous year. Tr. 752. Ms. Herrick checked boxes indicating that Plaintiff had symptoms that included loss of interest, appetite disturbance, decreased energy, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, persistent disturbances of mood or affect, emotional withdrawal or isolation, and sleep disturbance. Tr. 753. She also checked boxes indicating that Plaintiff's impairments precluded performance of most tasks required for unskilled work. Tr. 754-55. Ms. Herrick also indicated that Plaintiff would be off task more than 30 percent of the workday and would miss more than 4 days of work per month. Tr. 755-56.

Plaintiff returned to see Ms. Herrick on March 19, 2018 and reported he had failed his classes. Tr. 809. On April 13, 2018, Plaintiff had an anxious mood, appropriate affect, and normal thought processes. Tr. 810. A month later, Plaintiff told Ms. Herrick that he wanted to change schools so he could earn his certificate. Tr. 811. Ms. Herrick observed that Plaintiff continued to struggle with managing minimal daily stressors and academic expectations. *Id*.

On June 8, 2018, Harbinder Toor, M.D. ("Dr. Toor"), performed a consultative examination. Tr. 788. Plaintiff reported he cleaned, did laundry, watched television, socialized with friends, and had hobbies of photography and video games. Tr. 789. On examination, Plaintiff had a normal gait and could walk on heels and toes without difficulty; he needed no help changing for the exam, but he had "slight" difficulty getting on and off the exam table. Tr. 789. Plaintiff had

full strength in his extremities with no muscle atrophy; his hand and finger dexterity were intact; and his grip strength was normal. Tr. 790. Dr. Toor opined that Plaintiff had mild to moderate limitations in standing, walking, sitting, bending, and lifting due to back pain. Tr. 791. He also indicated that Plaintiff's diarrhea and headaches could interfere with his routine. *Id.*

Dr. Toor also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). Tr. 792-97. He opined that Plaintiff could continuously lift and carry up to 10 pounds, frequently lift up to 20 pounds, and occasionally lift up to 50 pounds. Tr. 792. Dr. Toor indicated that Plaintiff could sit, stand, and walk 30 minutes at a time for a total of 4 hours a day. Tr. 793. Plaintiff had no limits in reaching, handling, fingering, feeling, pushing, pulling, or operating foot controls. Tr. 794. He could perform postural activities continuously and had no environmental limitations. Tr. 795-96.

Todd Deneen, Psy.D. ("Dr. Deneen"), performed a consultative psychiatric evaluation of on June 8, 2018. Tr. 800-03. Plaintiff's demeanor was cooperative; he had adequate social skills; and his thought process was coherent and goal directed. Tr. 801. Dr. Deneen observed an anxious affect, and Plaintiff reported an anxious mood. *Id.* Plaintiff had mildly impaired attention and concentration due to anxiety; his memory was intact; and his insight and judgment were good. Tr. 802. Dr. Deneen opined that Plaintiff had no limitation in understanding, remembering, or applying simple directions and instructions, using reason and judgment to make work-related decisions, sustaining an ordinary routine and regular attendance at work, maintaining personal hygiene, and being aware of normal hazards. Tr. 802-03. He further opined that Plaintiff had mild limitation in understanding, remembering, or applying complex instructions, interacting adequately with supervisors, coworkers, and the public, sustaining concentration and performing at a consistent pace, and regulating emotions and controlling behavior. Tr. 803.

Plaintiff saw Ms. Herrick on June 13, 2018 and reported that he was accepted to a new school but was overwhelmed by the academic expectations and paperwork. Tr. 812. Financial stressors had increased his anxiety and created marital conflict. *Id*. On June 28, 2018, Plaintiff reported feeling anxious, low energy, and irritable, and he stated he was going to talk to his primary care physician about starting medication for his anxiety and depression symptoms. Tr. 813.

On July 6, 2018, Plaintiff had a follow-up appointment with Dr. Nelson regarding his anxiety. Tr. 826, 846. Plaintiff reported that the medication he had started about two weeks earlier had helped his depression. *Id*. He reported that he was happier most days, had more interest in doing things he enjoyed, and had less sleep and appetite disturbance. *Id*. However, Plaintiff reported his anxiety was not well controlled, and Dr. Nelson adjusted Plaintiff's medications. *Id*.

As noted above, Plaintiff contends that the ALJ erred in his step two determination that Plaintiff's IBS was not severe. *See* ECF No. 11-1 at 9-23. The ALJ found that Plaintiff's IBS was a medically determinable impairment but found that it was not severe as defined by the regulations. Tr. 17-18. "An impairment is 'severe' if it 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Casselbury v. Colvin*, 90 F. Supp. 3d 81, 92–93 (W.D.N.Y. 2015) (quoting *Eralte v. Colvin*, No. 14 Civ. 1745(JCF), 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014): 20 C.F.R. § 404.1520(c)). Notably, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (internal citations omitted). Furthermore, Plaintiff bears the burden of showing that he suffers from a severe impairment that renders him disabled. *Id*. (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

The ALJ correctly noted that Plaintiff was treated for IBS on an infrequent basis. Tr. 18. The evidence regarding Plaintiff's IBS during the relevant period reveals a relatively mild or benign condition. Tr. 699,701, 704, 706, 714, 716, 718,7 22, 724, 726. Around his alleged onset date in November 2015, Plaintiff reported he had three to four bowel movements per day, and his examination was normal. Tr. 418. The following year, Plaintiff had another normal abdominal examination, and his doctor characterized his IBS as "decently controlled." Tr. 718. On May 3, 2017, Plaintiff denied diarrhea and constipation, and Dr. Nelson characterized Plaintiff's IBS as "fairly well controlled." Tr. 703-04. When Plaintiff saw Dr. Nelson the next month, the records contain no mention of IBS. Tr. 701-02.

The ALJ also noted that Plaintiff's IBS symptoms did not interfere with his ability to exercise or take vacations. Tr. 18, 269, 622, 767. As explained above, to be considered severe, an impairment or combination of impairments must cause "more than minimal limitations in [a claimant's] ability to perform work-related functions." *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018). Based on the foregoing, substantial evidence supports the ALJ's finding that Plaintiff's IBS was not a severe impairment.

Plaintiff argues that, even if his IBS was a nonsevere impairment, the ALJ should have included limitations related to IBS in the RFC. See ECF No. 11-1 at 19-23. However, Plaintiff has not met his burden to prove additional limitations were necessary. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2nd Cir. 2014) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2nd Cir. 2008)) ("'The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four[.]'"). In his opinion, Dr. Toor indicated that Plaintiff had IBS, but when asked how the impairment affected Plaintiff's activities, he did not include any additional limitations. Tr. 797. Additionally, as noted

above, Plaintiff's IBS was characterized as "decently controlled" and "fairly well controlled." Tr. 704, 718. Furthermore, at the administrative hearing, Plaintiff testified that his IBS symptoms were exacerbated by his anxiety. Tr. 70. Accordingly, the ALJ limited Plaintiff to only occasional interaction with others and simple work, which would reduce his anxiety, and, in turn, would reasonably reduce his IBS symptoms. Tr. 22.

Plaintiff also argues that the frequency of bathroom breaks required due to his IBS would render him disabled. *See* ECF No. 11-1 at 23. Plaintiff testified that during flare-ups, he would need to use the bathroom one to two times every 30 minutes. Tr. 77. As demonstrated above, however, Plaintiff's IBS was fairly well controlled, and he did not sustain his burden to prove he required additional restroom breaks beyond those normally allowed. *See, e.g.*, *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Here, Smith had a duty to prove a more restrictive RFC, and failed to do so."). Thus, Plaintiff failed to sustain his burden to show additional limitations were required, and the Court finds no error.

Contrary to Plaintiff's argument, the ALJ properly evaluated all the relevant evidence, including the opinion evidence, and substantial evidence supports the RFC. The ALJ found that Plaintiff could perform a full range of work at all exertional levels. Tr. 21. This finding is consistent with the records showing Plaintiff had mostly benign physical examination findings, a normal gait and full strength. Tr. 701, 724, 789-90. It is also consistent with Plaintiff's activities, which included going on walks, geocaching,[2] and hiking. Tr. 269. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No.

---

[2] According to National Geographic, geocaching is a type of global treasure hunt where participants use GPS devices to look for caches, or hidden stashes of objects. National Geographic Resource Library, Encyclopedic Entry, https://www.nationalgeographic.org/encyclopedia/geocaching.

17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)).

With regard to Plaintiff's mental impairments, the ALJ found that Plaintiff could understand, remember, and apply simple instructions and carry out simple tasks. Tr. 21. This finding is consistent with Ms. Clattenburg's April 2016 opinion that Plaintiff had no evidence of limitation in understanding, remembering, or carrying out instructions or making simple decisions. Tr. 862, 866. In September 2016, Ms. Clattenburg also opined that Plaintiff could make simple decisions. Tr. 860. In June 2018, Dr. Deneen opined that Plaintiff had no limitation in understanding, remembering, or applying simple directions and instructions and using reason and judgment to make work-related decisions. Tr. 802-03. The ALJ gave Dr. Deneen's opinion great weight, explaining that he was the only acceptable medical source to provide an opinion on Plaintiff's ability to perform basic work activities, and his opinion was fairly consistent with other clinical findings in the record. Tr. 24.

The ALJ also found Plaintiff could sustain an ordinary routine, could interact with supervisors, co-workers, and the public occasionally, and required no special supervision. Tr. 21. This finding is consistent with Plaintiff's reports that he socialized with friends. Tr. 269, 789. Dr. Toor also noted that Plaintiff was cooperative and had adequate social skills. Tr. 801. In fact, Plaintiff was frequently noted to be cooperative, indicating an ability to interact with others on at least an occasional basis. Tr. 418, 454, 466, 595, 598, 603, 605, 623.

Plaintiff argues that the ALJ failed to give appropriate weight to an April 2016 opinion from Ms. Clattenburg and failed to evaluate a September 2016 opinion from Ms. Clattenburg. *See* ECF No. 11-1 at 23-26. As an initial matter, the Court notes that, effective for claims filed on or

after March 27, 2017, the Social Security agency comprehensively revised its regulations governing medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). For the purposes of this case, however, the prior version of the regulation applies. *See Smith v. Colvin*, No. 16-CV-6150L, 2018 WL 1210891, at *2 (W.D.N.Y. Mar. 8, 2018). In affording less weight to Ms. Clattenburg's opinions, the ALJ appropriately considered the regulatory factors for evaluating medical opinions, including the fact that Ms. Clattenburg is an "other source," rather than an "acceptable medical source," and thus, her opinion was not entitled to any particular deference.[3] *Anderson v. Colvin*, No. 5:12-CV-1008 GLS/ESH, 2013 WL 5939665, at *6 (N.D.N.Y. Nov. 5, 2013); *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) ("[W]hile the ALJ is certainly free to consider the opinion of [non-acceptable medical sources] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician."); *see also* 20 C.F.R. § 416.913.

In addition, the ALJ recognized that Ms. Clattenburg's opinion that Plaintiff may benefit from not working until school is completed is an opinion on an issue reserved for the Commissioner. 20 C.F.R. § 416.927(d). Furthermore, as the ALJ noted, Ms. Clattenburg's statement that it would be difficult for Plaintiff to work and go to school at the same time does not support a finding that he is unable to do any kind of work at all. Tr. 25. Finally, the ALJ observed that Ms. Clattenburg offered no specific functional limitations, but only varying degrees of

---

[3] When considering an "other source," an ALJ must use "the same factors for the evaluation of the opinions from [treating sources]." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011). The regulatory factors include (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). However, the ALJ was not required to consider every factor. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

limitation in broad areas of work-related functioning. Tr. 25, 862. The same criticisms apply to the opinion she provided a few months later. Thus, substantial evidence supports according little weight to Ms. Clattenburg's opinions.

Plaintiff also argues that the ALJ improperly weighed the opinion from his counselor, Ms. Herrick. *See* ECF No. 11-1 at 23-29. Plaintiff started therapy with Ms. Herrick in April of 2017. Tr. 23, 750. Plaintiff endorsed depressive and anxiety symptoms, and mental status examination findings showed deficits in his mood and affect with normal thought processes. Tr. 23, 748-78, 808-13. The ALJ concluded that the examination results supported the finding that Plaintiff could not perform complex tasks, but they were consistent with his ability to perform simple tasks with minimal interaction with others. Tr. 23. Accordingly, the ALJ afforded less weight to Ms. Herrick's opinion that Plaintiff's mental impairments would render him off task more than 20 percent of a normal workday and cause him to miss at least four days of work per month. Tr. 24.

The ALJ clearly explained his reasoning for affording less weight to Ms. Herrick's opinion than to the opinion of Dr. Deneen. Tr. 24.  In discounting her opinion, the ALJ correctly noted that Ms. Herrick was not an acceptable medical source. Tr. 24. 20 C.F.R. § 416.927(d). In addition, the ALJ noted that her opinion was not consistent with the mental status examination findings throughout the record. Tr. 24. *See Bamberg v. Comm'r of Soc. Sec.*, No. 18-CV-00337-DB, 2019 WL 5618418, at *7 (W.D.N.Y. Oct. 31, 2019) (ALJ properly discounted nurse practitioner opinion based on claimant's subjective complaints and that was inconsistent with the medical evidence and conservative treatment). Furthermore, the ALJ observed that Ms. Herrick's opinion was not consistent with Plaintiff's activities, including going on vacation and attending school. Tr. 24. Thus, substantial evidence supports affording less weight to Ms. Herrick's opinion.

Plaintiff argues that if the ALJ gave the opinions of Ms. Clattenburg or Ms. Herrick "controlling weight," he would be found disabled. *See* ECF No. 11-1 at 29. However, controlling weight can only be granted to a medical opinion from an acceptable medical source. 20 C.F.R. § 416.927(c)(2). As noted above, neither Ms. Clattenburg nor Ms. Herrick is an acceptable medical source. 20 C.F.R. § 416.927(f). Thus, the ALJ could not give controlling weight to either opinion. The Court finds that the ALJ properly considered the opinions of Ms. Clattenburg and Ms. Herrick, and substantial evidence supports according less weight to the opinions of Plaintiff's therapists.

While Plaintiff may disagree with the ALJ's RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision.). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original); *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff here failed to meet his burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

For all these reasons, the Court finds that the ALJ appropriately considered the evidence of record, including the clinical findings and the medical opinions, and the ALJ's determination was supported by substantial evidence. Accordingly, the Court finds no error.

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 17) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE